407 P.2d 399

**The STATE of Arizona, Appellee,**
**v.**
**Troy Gene BRADY, Appellant.**
**No. I CA–CR 12.**

Court of Appeals of Arizona.
Nov. 8, 1965.

Review Denied Dec. 28, 1965.

W. T. Choisser, Phoenix, for appellant.

Darrell F. Smith, Atty. Gen., by Gary K. Nelson, Asst. Atty. Gen., for appellee.

DONOFRIO, Judge.

The Appellant, Troy Gene Brady, hereinafter also referred to as defendant, was charged with the crime of Burglary, a felony, without any designation as to the degree of said crime and found guilty by a jury. He was sentenced to serve a term in prison of not less than four years and six months and not more than five years. He appeals assigning several errors which he claims the trial court committed.

Briefly, the facts show that the residence of the Gerald Porch family in Glendale, Arizona, was burglarized while they were in Oregon during the summer of 1963. Certain valuable articles consisting of such things as a television set, tape recorder, typewriter, movie camera, projector, jewelry, papers, guns, etc. were stolen from the home. Entrance was made by removing the screen and prying open the steel casement of the kitchen window. No one other than the owner had keys to the house except Mr. Porch's sister who kept them with her in her purse at all times.

Fingerprints were taken from a file cabinet inside the home which had been removed from its place of keeping in the house and rifled, and left in the house which had been ransacked. A matching by the F.B.I. of these fingerprints with those taken of the appellant at the time of his booking

212

established that the prints were identical. Evidence showed that the Porches never had the defendant inside the house. Mrs. Porch also testified she bought the cabinet new; that it had never been taken outside the house since they lived there; and that she cleaned the cabinet before she left for the summer.

■ The Defendant's first assignment of error is to the admission in evidence of State's Exhibits 2 and 3, fingerprint cards, for the reason that no foundation was laid for their admission. The exhibits represented fingerprints lifted by Mr. Bergmann, fingerprint officer of the Glendale Police Department, from the file cabinet. Mr. Bergmann did not personally send the prints to the F.B.I. in Washington for comparison but relied upon Officer Eldridge of the investigating department to do so. At the trial Bergmann identified the prints as the ones he had taken. Mr. Eldridge was not called as a witness.

Defendant asserts that the prosecution's failure to show a chain of custody of the fingerprints sent to the F.B.I. renders them inadmissible. We cannot agree. This type of evidence need only be properly identified before its admission.

Officer Bergmann testified he lifted the fingerprints from the file cabinet in the house and placed them on the exhibits 2 and 3. These exhibits were identified and shown to be in the same condition. His pertinent testimony in this regard is as follows:

"Q. Are these Exhibits 2 and 3 in substantially the same condition as they were when you lifted them and made up the exhibits?

A. Yes, sir.

Q. There has been no alteration of them?

A. There has been no alterations to them at all."

The exhibits were identified by the F.B.I. expert as the ones he used in making his comparison with the defendant's fingerprints. As to defendant's fingerprints Mr. Bergmann testified he took them on the usual cards furnished by the F.B.I. when he booked defendant. These prints he personally mailed to the F.B.I. and are marked as Exhibit 4. To complete the picture of the F.B.I.'s use of these exhibits we cite the following testimony of its expert, Mr. Bonebrake:

"My examination showed that on this lift, which is Exhibit No. 2, that there are four latent fingerprints of value; and on the lift which is Exhibit No. 3, there is also four latent fingerprints of value; and that I then compared these eight latent fingerprints of value with the fingerprints appearing on the fingerprint card, bearing the name of Troy Gene Brady, which is Exhibit No. 4, and it is my opinion that the four latent fingerprints on Exhibit 2, and the four latent fingerprints on Exhibit 3, were made by the same fingers that made the left index, left middle, left ring and left little fingerprints appearing on the fingerprint card, which is Exhibit 4."

■ We find the exhibits were properly identified and adequate foundation laid for their admission in evidence. An exhibit is admissible, so far as identity is concerned, where it has been identified as being the same object about which the testimony was given and when it is stated to be in the same condition as at the time of the occurrence in question, and it is not necessary to negative the possibility of an opportunity for tampering with an exhibit nor to trace its custody by placing each custodian upon the witness stand. Witt Ice & Gas Co. v. Bedway, 72 Ariz. 152, 231 P.2d 952 (1951); State v. Price, 76 Ariz. 385, 265 P.2d 444 (1954).

■ Defendant next contends that the evidence is insufficient upon which to base a conviction. The basis of this contention is that the only evidence offered connecting defendant with the crime was his fingerprints discovered in the home. Again we cannot agree.

The crime of burglary was established by showing that a house which had been

locked for the summer had a steel casement window pried open by an unauthorized person who gained entrance and after ransacking the place stole several items. He left his fingerprints on an article which had been previously cleaned which had been taken from its location in the house and rifled. Although the evidence is wholly circumstantial it does not reasonably admit of an inference that the fingerprints which tie the defendant with the crime came there innocently.

This case is distinguishable from the cases cited by appellant involving the principle that mere presence of the fingerprints at the scene of a crime is insufficient to establish guilt because of its additional facts. In the instant case the evidence showed that the fingerprints of defendant were not found in a place and under circumstances where they could have been reasonably made at a time other than the time of the commission of the offense. It is well established in our State that a crime may be proven by circumstantial evidence alone, and that fingerprints are a means of positive identification by which a defendant may be linked with the commission of the offense. Moon v. State, 22 Ariz. 418, 198 P. 288, 16 A.L.R. 362 (1921).

In the Moon case defendant's fingerprints were found on the porcelain slab of the cash register which had been removed from the counter to the floor in a burglary. Our Supreme Court in distinguishing that case from one where fingerprints had been found in a public place where it was possible for the accused to have placed them there innocently, said:

"But it cannot be said of this defendant that his presence at the cash register, as necessarily found by the jury, was consistent with any hypothesis of his innocence. The cash register was not in a public place. It had been removed and placed on the floor in an effort to rifle it. There were no finger prints other than the alleged finger prints of the defendant upon the porcelain slab. The facts of

the two cases are entirely different." 22 Ariz. 426, 198 P. 291.

The same would apply in this case.

We next consider the assignment that the court erred in failing to instruct and submit verdicts to the jury on the degrees of burglary.

From the inception of the complaint to the rendition of the verdict no mention was made as to the degrees of burglary. Nor did the court touch upon it in its instructions. There was no evidence as to the time of the day or night the crime may have been committed. There was some evidence that a light was left turned on in one of the rooms by whoever entered but there was also evidence to the effect that the windows had been covered with foil by the owners to prevent sunlight from entering and deteriorating the carpets and drapes, thus admitting of an inference that a light may have been necessary in the daytime.

In this case the Information alleged that the defendant "did then and there enter the dwelling house of Gerald T. Porch * * * with the intent * * * to commit the crime of theft therein * * * contrary to * * * Sections 13–301 and 13–302, A.R. S." This charge properly states the offense in the terms of the statute and refers to the sections.

The offense of burglary is defined in Subsection A of Section 13–302 A.R.S. as follows:

"A person entering a * * * dwelling house * * * with intent to commit grand or petty theft, or any felony, and a person entering an outhouse * * * with intent to commit a felony, is guilty of burglary."

This definition is complete in and of itself, the only matter in relation to the offense of burglary which is omitted from Subsection A is the matter of punishment. The matter of punishment is set forth in Subsection B and could as well be a separate section as the definition of the offense and the punishment for the offense are often in

separate sections. Subsection B is as follows:

"B. Burglary committed in the nighttime is burglary of the first degree, punishable by imprisonment in the state prison for not less than one nor more than fifteen years. Burglary committed in the daytime is burglary of the second degree, punishable by imprisonment in the state prison for not to exceed five years."

Subsection B would be just as adequate if it read:

"Burglary committed in the nighttime is * * * punishable by imprisonment in the state prison for not less than one nor more than 15 years. Burglary committed in the daytime is * * * punishable by imprisonment in the state prison for not to exceed five years."

In other words, the so-called "degree" of the burglary is determined by language not usually related to the "degree of the offense". The normal and usual use of the word "degree" relates to lesser included offenses as for example, murder in the second degree is a lesser included offense within murder of the first degree, and petty theft is a lesser included offense within grand theft. In murder, it is the quantum of the intent and in theft it is the quantum of value which is the distinguishing feature between the degrees of the offense. The word "degree" although used by the Legislature does not actually and technically refer to the degree of an offense but merely to the hour of its commission. Burglary in the daytime is not a lesser included offense within burglary in the nighttime. This fact does not negative the duty of the jury, having once found beyond a reasonable doubt, that a burglary has been committed, to resolve in favor of the defendant a daytime burglary against a nighttime burglary when the time of the commission of the offense has not been proven beyond a reasonable doubt. The reason for this is that by finding burglary in the second degree, or a daytime burglary,

the maximum sentence which can be imposed is reduced. It is not explained to the jury in this language but rather in the customary language of the degree of the offense, the reason being that the jury is concerned only with guilt or innocence and is not concerned with penalty or punishment or lack of penalty or punishment. Where as in the case at bar, the evidence is not sufficient to support beyond a reasonable doubt a finding of guilty of burglary in the nighttime, or burglary of the first degree, and burglary having been found beyond a reasonable doubt, the offense could only be that burglary which carries the lesser of the two punishments, or in the statutory language, burglary of the second degree.

It is urged that our conclusions cannot be sustained in the face of Subsection B of § 13–162 A.R.S. and Criminal Rule 292, 17 A.R.S. Subsection B of § 13–162 is as follows:

"When it appears that a defendant has committed a crime or public offense, and there is reasonable ground of doubt in which of two or more degrees he is guilty, he may be convicted of the lowest of such degrees only."

Criminal Rule 292 is as follows:

"*Verdict of guilty of offense divided into degrees*

If the indictment or information charges an offense which is divided into degrees without specifying the degree, the jurors, if they convict the defendant, shall make it appear by their verdict of which degree of the offense they find him guilty. If the indictment or information charges a particular degree, a verdict of guilty which does not specify a degree is a conviction of the degree charged."

If the finding of guilt is to sustain burglary in the nighttime and, therefore, the greater permissible sentence, this finding must be expressed by the jury in its verdict. Brough v. State, 54 Ariz. 237, 94 P.2d 869 (1939). Where, as here, daytime burglary and night-

time burglary are not truly different degrees of the offense of burglary, § 13–162, subsec. B and Criminal Rule 292, are not applicable. Within the spirit and intent of Brough, the verdict in this case that the defendant is "guilty of burglary, a felony" will support only a judgment of guilt using the statutory language of "burglary in the second degree" and a sentence within the limits of this classification of burglary. When the trial court stated at the time of sentence,

"The Court makes a statement for the record relative to this burglary being committed at night, and says it is the finding of fact that there is no evidence at all to support such, therefore

It is the finding that the Defendant is guilty of Burglary (Second Degree), * * *"

this statement was surplusage. The judgment of guilt both in the minutes and in the formal written judgment adjudged the defendant guilty of burglary in the second degree, a felony. This is in accord with both the law and the facts. There being no request that the court instruct the jury as to the distinction between burglary in the nighttime and burglary in the daytime and there being no request for a form of verdict limiting the jury's finding to burglary of the second degree, we find no reversible error for under the law there is no fundamental error in this case.

■ The defendant next urges that the trial court failed to properly instruct on circumstantial evidence and it erred in not giving certain requested instructions. We cannot find where defendant excepted to the giving or denying of any instruction, nor do we find in the instance of circumstantial evidence that he offered a requested instruction, however, we have examined the instructions to see if prejudicial error has been committed. Upon reading the in-

structions as a whole, we find no fault with them. They fairly state the law to be applied to this case.

 Defendant urges that the trial court erred in permitting the State to reopen its case to allow Mrs. Porch to further testify. Her testimony covered the purchase of the filing cabinet in Colorado, its continuous presence in her home, and the fact that she had cleaned it prior to leaving the house locked. This was pertinent to the other evidence concerning the cabinet. Reopening for additional testimony is within discretion of the trial court. We find no abuse of discretion in this regard.

Judgment affirmed.

STEVENS, C. J., and CAMERON, J., concur.