NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JSSAN STROVER, *Appellant.*

No. 1 CA-CR 22-0537
FILED 11-14-2023

Appeal from the Superior Court in Maricopa County
No. CR2021-001242-001
The Honorable Justin Beresky, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joshua C. Smith
*Counsel for Appellee*

Law Offices of Trent R. Buckallew, P.C., Phoenix
By Trent R. Buckallew
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Cynthia J. Bailey delivered the decision of the Court, in which Presiding Judge James B. Morse Jr. and Judge Brian Y. Furuya joined.

---

**B A I L E Y**, Judge:

¶1              Jssan Strover appeals his convictions and sentences for first-degree murder, attempted first-degree murder, and aggravated assault. Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2              We review the facts in the light most favorable to sustaining the verdicts. *See State v. Guerra*, 161 Ariz. 289, 293 (1989).

¶3              The trial evidence revealed the following: W.W. was hosting a party one evening at his South Phoenix retail store when an unknown assailant shot him three times in the back, killing him.  A.F., who was standing near W.W., was shot in the thigh and ankle, but survived.

¶4              Phoenix police responded to the scene and obtained security video footage depicting the area around W.W.'s store just before, during, and after the shooting.  The footage showed a masked African American male wearing black clothing and gloves get out of a rented white Chevrolet Impala, walk toward the victims, and fire a handgun in their direction.  The shooter then ran back to the Impala and quickly drove off.  Investigators found six nine-millimeter silver bullet casings in the area where the assailant shot the victims.

¶5              The next morning, a civilian found a black backpack in a rural desert area south of Phoenix and called police.  The backpack contained a nine-millimeter Glock handgun with one live round in its chamber, a 50-count box of ammunition containing 25 rounds of ammunition, and an extended firearm magazine containing 18 rounds—a total of 44 rounds.  All the ammunition matched the size, color, and manufacturer of the six casings found at the murder scene.  Black clothing—including gloves, a T-shirt, sweatpants, and a hooded sweatshirt—was also in the backpack, along with a paper shopping bag and receipt from a nearby sporting goods store indicating the gloves were purchased the afternoon of the shooting.  Like the shooter's sweatshirt in the surveillance video, the sweatshirt in the

backpack had distinctive "muted" stripes across the front. Surveillance video from the sporting goods store showed an individual matching the shooter's physical characteristics enter the store and purchase a pair of black gloves at the time shown on the receipt.

¶6          Forensic analysis of the Glock pistol found in the backpack determined it was the weapon that fired the casings officers located at the murder scene. Further investigation revealed the identity of the person who sold the Glock on the morning of the shooting. That person identified Strover as the man who purchased the gun.

¶7          The State charged Strover with first-degree murder (Count 1), attempted first-degree murder (Count 2), and aggravated assault (Count 3), alleging all were dangerous offenses for sentencing purposes because they involved the discharge of a firearm. The State also alleged aggravating factors as to each count. Two months after the shooting, Phoenix detectives arrested Strover in Georgia and extradited him to Arizona.

¶8          Having obtained a buccal swab from Strover after his arrest, police compared his DNA profile to DNA extracted from the clothing found in the desert. They matched to a certainty of one in 9.6 decillion.[1]

¶9          At trial, Strover's sole defense was misidentification. Near the end of the tenth and final day of trial, when the jury returned from deliberations, the trial court noticed a problem with the completed verdict form for Count 1: the foreperson had marked the "not guilty" box for the offense but also marked the "proven" box regarding dangerousness. Noting the findings were "inconsistent" because the verdict form directed the jury to determine dangerousness only if it found the defendant guilty of the underlying offense, the court instructed the jury to "go back in the jury room and review this verdict form and make sure . . . you checked the correct boxes. . . . If you need additional deliberations, that's fine, just -- I'm going to ask you to review that verdict form again." Neither party objected to the court's directive.

¶10          The jury returned four minutes later and found Strover guilty as charged on all counts. The jury also found the offenses were dangerous. The court polled the jurors individually, and they all agreed with the guilty verdicts. The aggravation phase of trial proceeded.

---

[1]    Thus, the odds of any random individual's DNA profile matching the DNA profile found on the clothing were one in 9,600,000,000,000,000,000,000,000,000,000,000.

3

¶11          As the jury deliberated on the State's alleged aggravating factors, Strover personally argued with the court regarding the court's refusal to enter a not guilty verdict for Count 1 based on the jury's initial verdict form. Strover repeatedly interrupted the court and used profanity. The court ordered Strover removed from the courtroom "for the rest of the day" due to his "disruptive behavior." Thus, Strover was not physically present when the jury returned unanimously proven aggravation verdicts as to all counts.

¶12          The court then released the jury, except for the foreperson, whom the court questioned under oath regarding the initially returned verdict form for Count 1. The foreperson explained that the jurors had unanimously found Strover guilty, but she made a "mistake" and "inadvertently checked off the wrong box."

¶13          At sentencing, the court imposed a natural life prison term for Count 1, an aggravated term of 21 years for Count 2, and a presumptive 7.5-year sentence for Count 3. The court imposed concurrent sentences for Counts 2 and 3, to run consecutive to the life term imposed for Count 1.

¶14          Strover timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

## DISCUSSION

I.      The "Original Verdict" for Count 1

¶15          "When a defendant fails to object to trial error, he forfeits appellate relief absent a showing of fundamental error." *State v. Escalante*, 245 Ariz. 135, 138, ¶ 1 (2018). This standard requires the defendant to establish the trial court "committed error that was both fundamental and prejudicial." *Id.* at 140, ¶ 12. Strover argues the court erred by failing to announce "the jury's original verdict of acquittal [for Count 1]" followed by a poll of the jurors to determine their individual agreement. Alternatively, Strover contends the court should have made findings regarding the defective verdict form and then reinstructed the jury or declared a mistrial. We review the court's actions for fundamental error only because Strover did not raise either of these objections at trial. *Id.*

¶16          Based on the trial court's explicit verbal and written instructions to consider dangerousness *only* if it found Strover guilty of the offense—an instruction repeated on all the verdict forms—the jury's initial not guilty and dangerousness findings for Count 1 were "impossible in the

4

sense that they cannot be given simultaneous effect." *State v. Hansen*, 237 Ariz. 61, 68, ¶ 21 (App. 2015). This court has recognized that such a failure of the jury "to express a meaningful intention [as to a defendant's guilt]" requires further deliberations to resolve the ambiguity. *Id.* Here, the trial court noted the inconsistent findings and properly instructed the jury to review the verdict form and deliberate further, if necessary. Significantly, when the court directed the jury to review the inconsistent findings, it did not indicate whether either of those findings was somehow incorrect or improper. Rather, the court merely informed the jury that the findings were inconsistent. Strover does not contend otherwise. Thus, the court complied with its legal duty to take "immediate corrective action" when the jury returned a "patently uncertain" verdict as reflected in the first verdict form for Count 1. *Id.* at 66, ¶ 13 (quoting *United States v. Rastelli*, 870 F.2d 822, 835 (2d Cir. 1989)). Accordingly, the court effectively took the corrective measures that Strover argues it should have taken, including polling the jury. Strover therefore fails to satisfy his burden of establishing error, let alone fundamental error. *See Escalante*, 245 Ariz. at 142, ¶ 21 (recognizing that, under fundamental error review, the defendant bears the burden of first establishing error).

II.     The Denial of Strover's Rule 20 Motion

**¶17**     Strover challenges the trial court's denial of his motion for judgment of acquittal under Arizona Rule of Criminal Procedure ("Rule") 20. *See* Ariz. R. Crim. P. 20(a)(1) ("After the close of evidence on either side, and on motion or on its own, the court must enter a judgment of acquittal on any offense charged in an indictment, information, or complaint if there is no substantial evidence to support a conviction."). Primarily, Strover argues the evidence failed to sufficiently identify him as the shooter.

**¶18**     As the plain language of Rule 20 makes clear, a motion for judgment of acquittal must be granted when "there is no substantial evidence to support a conviction." Ariz. R. Crim. P. 20(a)(1). We review *de novo* a trial court's ruling on a Rule 20 motion. *State v. Bible*, 175 Ariz. 549, 595 (1993), *abrogation on other grounds recognized by McKinney v. Ryan*, 813 F.3d 798, 815 (9th Cir. 2015).

**¶19**     "'Substantial evidence' is evidence that reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt." *State v. Jones*, 125 Ariz. 417, 419 (1980) (citations omitted). When reviewing the record for substantial evidence, we do not evaluate the relative probative value of apparently conflicting evidence. *State v. Borquez*, 232 Ariz. 484, 487, ¶ 9 (App. 2013). In

other words, we do not weigh evidence, which is the sole province of the jury. *See State v. Soto-Fong*, 187 Ariz. 186, 200 (1996) (recognizing that the jury, not a reviewing court, determines whether evidence is credible (citation omitted)). Similarly, because evidence that gives rise to a reasonable inference of guilt is sufficient to support a conviction, *see State v. Burton*, 144 Ariz. 248, 252 (1985), evidence is not less probative merely because it is circumstantial, *Bible*, 175 Ariz. at 560 n.1; *see* Rev. Ariz. Jury Instr. ("RAJI") Prelim. Crim. 4 (Direct and Circumstantial Evidence) (5th ed. 2019) ("Circumstantial evidence is the proof of a fact or facts from which the existence of another fact may be determined. The law makes no distinction between direct and circumstantial evidence."). As long as a rational jury could reasonably infer Strover's guilt beyond a reasonable doubt based on the trial evidence, we will affirm the trial court's denial of the Rule 20 motion. *See Burton*, 144 Ariz. at 252.

¶20 Here, the evidence of Strover's guilt, viewed in the requisite light most favorable to sustaining the guilty verdicts, *Guerra*, 161 Ariz. at 293, was substantial. The evidence established Strover purchased the murder weapon hours before driving across town and purchasing gloves. Later that evening, the assailant—wearing Strover's recently purchased gloves—proceeded to W.W.'s store, parked, and walked to within a few yards of the victims before using the Glock Strover had purchased earlier that day and intentionally shot W.W. at least three times in the back and A.F. twice in the leg. The jury therefore could reasonably determine that Strover was planning to murder at least one of the victims when he purchased the gun and gloves.[2] Additionally, just after the shooting, the assailant ditched the murder weapon, the gloves, and other potentially identifying evidence in the desert, suggesting that once the gun and gloves had each apparently served their sole purpose—respectively, to murder one or both victims and to conceal the assailant's identity—the assailant had no more use for them. *See In re William G.*, 192 Ariz. 208, 213 (App. 1997) (recognizing that, absent an admission, determining a person's intent requires drawing an inference "from all relevant [] circumstances"). Thus, the testimony identifying Strover as the individual who purchased the murder weapon hours before the shooting, Strover's DNA on clothing that visibly matched the shooter's clothes, and the backpack containing the clothing and murder weapon located in the desert the morning after the shooting all lead to a reasonable inference that Strover was the shooter who intentionally killed W.W. and caused A.F.'s gunshot injuries while trying to murder him. *See* A.R.S. §§ 13-1105(A)(1) (elements for first-degree

---

[2] The trial court instructed the jury on "transferred intent." *See* RAJI Stat. Crim. 2.024.

premeditated murder), -1203(A)(1) & -1204(A)(2) (elements for aggravated assault with a deadly weapon resulting in physical injury); *see also* A.R.S. § 13-1001(A)(2) (defining "attempt").

**¶21**         In addition to the foregoing substantial evidence of guilt, the State presented evidence that reasonably suggested Strover *knew* he was guilty.  Less than six days after the shooting, Strover fled to Atlanta, where he was arrested and informed that he was a suspect in the shooting of W.W. and A.F.  Then, aware of the charges he was facing here, Strover escaped from custody as detectives initially attempted to extradite him back to Arizona.   As the trial court properly instructed the jurors—without objection—they could justifiably consider Strover's repeated "flight or concealment" as evidence of his guilty conscience. *See State v. Cutright*, 196 Ariz. 567, 570, ¶ 12 (App. 1999) ("Instructing on flight is proper when . . . there is evidence from which it can be reasonably inferred that the defendant engaged in some 'eluding' conduct that [] was an attempt to prevent apprehension . . . ."), *disapproved on other grounds by State v. Miranda*, 200 Ariz. 67, 69, ¶ 5 (2001).

**¶22**         Nonetheless, Strover maintains the evidence was insufficient because the State presented no eyewitness testimony identifying him as the shooter.  But the lack of such direct evidence does not negate the substantial nature of the circumstantial evidence establishing Strover was the shooter. *See Burton*, 144 Ariz. at 252 ("[A] conviction may be proved by circumstantial evidence alone.").   To conclude otherwise requires us to improperly reweigh the evidence, and then conclude no rational juror could find it established Strover's guilt beyond a reasonable doubt. *See Borquez*, 232 Ariz. at 487, ¶ 9 ("We do not reweigh the evidence to decide if we would reach the same conclusions as the trier of fact." (citation and internal quotations omitted)).  In addition to the evidence discussed above, the jury also viewed surveillance video from the murder scene and the sporting goods store.   Having received and considered all of this evidence, regardless of its circumstantial nature, the jury could determine for itself whether Strover was the shooter.

**¶23**         Strover also refers to "inconsistencies" in the evidence that the State failed to explain.  For example, the evidence suggested Strover did not personally rent the white Impala that appeared in the surveillance video at the murder scene.   Also, someone other than Strover purchased the ammunition from a store near the location where he purchased the murder weapon.  But if the State presents substantial evidence of guilt, evidentiary "inconsistencies" do not require granting a Rule 20 motion. *See State v. Nash*, 143 Ariz. 392, 404 (1985) (noting the State is not required "to negate

every conceivable hypothesis of innocence when guilt has been established by circumstantial evidence" (citation omitted)).  Again, we do not reweigh the evidence.

¶24        Strover further argues that the DNA on the clothing did not result from him wearing the clothes.  He instead contends the DNA was deposited on the clothes through "secondary transfer."  But Strover presented the jury with that argument, and we will not determine whether the jury should have accepted it and found Strover not guilty.  *See State v. Bronson*, 204 Ariz. 321, 328, ¶ 34 (App. 2003) ("Because a jury is free to credit or discredit testimony, we cannot guess what they believed, nor can we determine what a reasonable jury should have believed." (citation omitted)).  Similarly unavailing is Strover's argument that the police "missed opportunities" to conduct additional lines of investigation that may have revealed exculpatory evidence.  As this court long ago observed, the law does not require police "to investigate every possible circumstance which might exculpate [defendants]," nor will we, "by judicial fiat, require the police to expend valuable time searching for exculpating evidence when they have developed a sufficient case against an accused."  *State v. Turrubiates*, 25 Ariz. App. 234, 240 (1975).

¶25        The evidence of Strover's guilt was substantial.  The trial court therefore correctly denied Strover's Rule 20 motion.

     III.     The Amended Indictment

¶26        On the ninth day of trial, the State moved to amend Count 3 by adding a definition of a dangerous offense.  As the State noted, and consistent with the record, the indictment's caption alleged all counts as dangerous offenses, including Count 3, but the body of the indictment did not include the definition of a dangerous offense with Count 3 as it did with the other counts, both of which alleged Strover's discharge of a firearm supported the allegation of dangerousness.

¶27        Over Strover's objection, the court granted the State's request and amended Count 3 to include the following: "The State further alleges that the offense charged in this count is a dangerous felony because the offense involved the discharge, use, or threatening exhibition of a Firearm, a deadly weapon or dangerous instrument, in violation of A.R.S. §§ 13-105 and 13-704."  *See* A.R.S. §§ 13-105(13) ("'Dangerous offense' means an offense involving the discharge, use or threatening exhibition of a deadly weapon or dangerous instrument or the intentional or knowing infliction of serious physical injury on another person."); -704(A) (providing for a

presumptive term of 7.5 years' imprisonment for "a person who is at least eighteen years of age or who has been tried as an adult and who stands convicted of a [Class 3] felony that is a dangerous offense").

**¶28**        Citing Rule 13.5(b), Ariz. R. Crim. P., Strover contends the trial court abused its discretion, *see State v. Buccheri-Bianca*, 233 Ariz. 324, 329, ¶ 16 (App. 2013), because he did not agree to the amendment and the State's motion was untimely. Strover thus asserts he is entitled to resentencing on Count 3 as a non-dangerous offense.

**¶29**        An indictment generally limits the trial to the specific charge or charges stated in the indictment, and absent the defendant's consent, a criminal "charge may be amended only to correct mistakes of fact or remedy formal or technical defects." Ariz. R. Crim. P. 13.5(b). "A defect may be considered formal or technical when its amendment does not operate to change the nature of the offense charged or to prejudice the defendant in any way." *State v. Bruce*, 125 Ariz. 421, 423 (1980) (citations omitted).

**¶30**        When considering the appropriateness of an amendment to an indictment, courts should not conflate Rule 13.5(b) and the notice requirement of the Sixth Amendment.[3] *See State v. Freeney*, 223 Ariz. 110, 114, ¶ 24 (2009). "Rule 13.5(b) is a prophylactic rule of criminal procedure" that "is limited to the procedural requirements for amending indictments," and "a violation of Rule 13.5(b) does not necessarily equate to an infringement of a defendant's Sixth Amendment rights." *Id.* at ¶ 25. And even if the elements of an amended charge differ from those in the original charge, and therefore change the nature of the offense and violate Rule 13.5(b), such a violation is neither prejudicial per se nor structural error, but is instead subject to harmless error review. *Id.* at 111, 114, ¶¶ 2, 26 (finding an improper amendment to an indictment was harmless beyond a reasonable doubt when the defendant had notice of the allegation and the change did not alter his trial strategy).

**¶31**        Here, even assuming *arguendo* that the trial court abused its discretion in allowing the amendment, any error was harmless beyond a reasonable doubt. Count 3 of the original indictment charged Strover with committing aggravated assault because he allegedly used a firearm—a deadly weapon or dangerous instrument—to intentionally, knowingly, or

---

[3]     Strover does not contend the amended indictment violated the Sixth Amendment and has waived any argument in that regard. *See State v. Bolton*, 182 Ariz. 290, 297-98 (1995).

recklessly cause physical injury to A.F. *See* A.R.S. §§ 13-1203(A)(1), -1204(A)(2). This was the same allegation as that used in the amendment to allege dangerousness. Thus, amending the indictment to specify that Strover's use of a firearm rendered Count 3 a dangerous offense—as stated in the caption—did not deprive Strover of any required notice. In fact, when the State moved to amend the indictment, Strover did not contest the State's assertion that he had been on notice that the State was alleging and intending to prove that Count 3 was a dangerous offense because he had used a deadly weapon or dangerous instrument to injure A.F.

¶32 Moreover, the revision to Count 3 did not prejudice Strover, and Strover does not contend otherwise. Both before and after the amendment, Strover's global defense to all counts was misidentification. As a result, amending the indictment to allege the specific conduct constituting a dangerous offense applicable to Count 3 (discharging a firearm as opposed to causing serious physical injury) had no bearing on Strover's trial strategy. *See Freeney*, 223 Ariz. at 115, ¶ 28 (citing *State v. Ramsey*, 211 Ariz. 529, 533, ¶ 7 (App. 2005) (finding no showing the defense was prejudiced by an allegedly duplicitous indictment when the defendant claimed he had not committed the charged acts)). Accordingly, any violation of Rule 13.5(b) was harmless beyond a reasonable doubt. *See id.*

IV. The Exclusion of Strover from the Courtroom

¶33 When the trial court excluded Strover from the courtroom for about the final fifteen minutes of trial for his repeated interruptions and use of profanity, Strover did not object on any basis. Strover now argues the court committed fundamental or structural error by excluding him from the courtroom without first warning him, explaining the process for him returning, providing a mechanism for him to consult with counsel during his absence, or later checking if he wished to return for the final few minutes of that day. *See Escalante*, 245 Ariz. at 140, ¶ 12 (reviewing an unobjected-to alleged error for fundamental, prejudicial error); *State v. Forte*, 222 Ariz. 389, 392, 394, ¶¶ 6, 14 (App. 2009) ("Structural error is that which affects the basic framework within which the trial proceeds and which so undermines the proceedings that the trial cannot reliably serve its function as a vehicle for determination of guilt or innocence." (citations and internal quotations omitted)).

¶34 The Sixth and Fourteenth Amendments to the United States Constitution and Article 2, Section 24, of the Arizona Constitution guarantee a criminal defendant's right to be present at trial. *State v. Schackart*, 190 Ariz. 238, 255 (1997). However, "[t]he right to be personally

present applies only to those proceedings in open court whenever [the accused's] presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *State v. Christensen*, 129 Ariz. 32, 38 (1981) (citations and internal quotations omitted).

**¶35** A defendant "forfeits the right to be present" at trial if the court warns him that continued disruptive conduct will lead to expulsion, and the defendant nonetheless engages in disruptive conduct. Ariz. R. Crim. P. 9.2(a). At the time of expulsion, the court must inform a defendant that he can return upon a promise to engage in orderly conduct. *Id.* Additionally, "[a]fter expulsion, the court must use every feasible means to allow the defendant to watch, hear, and be informed of the proceeding's progress, and to consult with counsel at reasonable intervals." Ariz. R. Crim. P. 9.2(b). "The court should inquire periodically if the defendant wishes to reacquire the right to be present" and should allow the defendant to return upon an assurance of future good behavior. Ariz. R. Crim. P. 9.2(b)–(c).

**¶36** Strover maintains the court did not follow the procedures outlined in Rule 9.2 for when a court determines a defendant has forfeited the right to be present due to disruptive conduct. We agree with Strover that the record shows that, although the trial court correctly removed Strover from the courtroom for his disruptive behavior, the court did not follow the directives of Rule 9.2. The court's oversights, however, do not require reversal of Strover's convictions.

**¶37** Here, Strover was absent when the jury finished deliberating on the aggravating circumstances allegations, when the jury then returned its findings, and when the court briefly questioned the foreperson about the defective verdict form for Count 1. Strover cites no authority holding that a defendant's absence from such proceedings constitutes a violation of the right to be present for trial. Nor does he otherwise explain how a defendant's personal presence at such proceedings has a "reasonably substantial [relation] to the fullness of his opportunity to defend against the charge[s]." *Christensen*, 129 Ariz. at 38 (citations omitted). The only conceivable contribution Strover could personally make during jury deliberations is in crafting a response to the jury's questions for the judge, if any. But our supreme court has held that a defendant does not have a constitutional right to be personally present "to discuss how to handle the jury's communications." *Id.* We also fail to see how Strover's personal absence when the jury returned its aggravating factor findings and when the court questioned the foreperson "so insulted the basic framework of a criminal [trial] such that the proceeding could no longer serve its core

11

function." *Forte*, 222 Ariz. at 394, ¶ 16. Because Strover fails to establish that he was absent from a "critical stage" of trial at which he had a right to be present, he fails to establish any error was fundamental and prejudicial, let alone structural.

V.     The Use of Serious Physical Injury as an Aggravating Factor

¶38     Strover argues the court improperly aggravated his sentence for Count 2 based on the jury's finding that he caused A.F.'s serious physical injury ("SPI"). According to Strover, the SPI finding was the basis for enhancing his sentence under A.R.S. § 13-704(A), and such a finding cannot be used to both enhance and aggravate a sentence. *See* A.R.S. § 13-701(D)(1) (providing that the infliction of SPI is properly used to aggravate a sentence "except if [SPI] . . . has been used to enhance the range of punishment under § 13-704"); *see also State v. Alvarez*, 205 Ariz. 110, 112, ¶ 4 n.1 (App. 2003) (noting that enhancement of a sentence, which increases the entire range of possible punishment for each class of an offense, differs from aggravation and mitigation, which raise or lower a particular sentence within the permissible range). As Strover concedes, we review for fundamental error because he did not raise this objection to the court. *See State v. Thues*, 203 Ariz. 339, 340, ¶ 4 (App. 2002).

¶39     We reject Strover's argument. The dangerousness finding used to enhance the sentence in Count 2 was not based on the SPI that Strover inflicted on A.F. when Strover attempted to murder him. Rather, Strover's use of a gun made Count 2 a dangerous offense. *See* A.R.S. § 13-105(13) ("'Dangerous offense' means an offense involving the discharge, use or threatening exhibition of a deadly weapon or dangerous instrument *or* the intentional or knowing infliction of serious physical injury on another person." (emphasis added)). Thus, although SPI may not be used to both enhance and aggravate a sentence, SPI did not enhance the sentence for Count 2. No error occurred, let alone fundamental error.

VI.     The Denial of a Lesser-Included Offense Instruction

¶40     Finally, Strover argues the trial court erred by denying defense counsel's request for a lesser-included offense instruction of second-degree murder for Count 1.[4] Strover contends the evidence was sufficient to find he did not premeditate the murder of W.W.

¶41     We review a trial court's decision to refuse a jury instruction on a lesser-included offense for an abuse of discretion. *See State v. Wall*, 212

---

4     Strover personally objected to his counsel's request.

Ariz. 1, 3, ¶ 12 (2006). A defendant is entitled to a lesser-included offense instruction when two conditions are satisfied: "The jury must be able to find (a) that the State failed to prove an element of the greater offense and (b) that the evidence is sufficient to support a conviction on the lesser offense." *Id.* at 4, ¶ 18 (citation omitted). "It is not enough that, as a theoretical matter, the jury might simply disbelieve the state's evidence on one element of the crime because this would require instructions on all offenses theoretically included in every charged offense." *Id.* (citations and internal quotations omitted). "Instead, the evidence must be such that a rational juror could conclude that the defendant committed only the lesser offense." *Id.* (citation omitted).

**¶42** "Second-degree murder is a lesser-included offense of premeditated first-degree murder, the difference between the two being premeditation." *State v. Sprang*, 227 Ariz. 10, 12, ¶ 6 (App. 2011) (citation omitted). Thus, the dispositive question is whether the evidence supported a conclusion that the shooter did not premeditate the murder of W.W. Our review of the evidence, *see supra* ¶¶ 3–8, 20–25, leads us to conclude that the trial court could reasonably determine no rational juror could find the shooter murdered W.W. without premeditation. Accordingly, the court did not abuse its discretion by denying the request for a second-degree murder instruction as to Count 1. *See State v. Chapple*, 135 Ariz. 281, 297 n.18 (1983) (stating that an abuse of discretion occurs when the court's decision is "not justified by, and clearly against, reason and evidence"), *superseded by statute on other grounds as stated in State v. Riley*, 248 Ariz. 154, 167, ¶ 7 (2020); *see also* Ariz. R. Crim. P. 21.4(a) (stating that a court must present forms of verdict for a lesser-included offense only if the lesser offense is "supported by the evidence").

**CONCLUSION**

**¶43** We affirm Strover's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED: AA