961 P.2d 1006

**STATE of Arizona, Appellee.**

v.

**Toribio Rodriguez RODRIGUEZ,
Appellant.**

No. CR–97–0120–AP.

Supreme Court of Arizona,
En Banc.

July 14, 1998.

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel Criminal Appeals Section and Linda L. Knowles, Phoenix, Assistant Attorney General, for Appellee.

David Alan Darby, Tucson, for Appellant.

OPINION

McGREGOR, Justice.

¶1 Defendant Toribio Rodriguez appeals his conviction and death sentence for first-degree murder, and his convictions and sentences for two counts of sexual assault and one count of first-degree burglary.[1] We review this case on direct, automatic appeal pursuant to Arizona Revised Statutes (A.R.S.) section 13–4031. For the following reasons, we reverse on all counts and remand for retrial.

I.

¶2 Dawn Dearing (the victim) lived alone in an apartment complex in Tucson. She spent the evening of August 24, 1988, at her apartment with a co-worker. The victim became intoxicated[2] before the co-worker left.

1. This appeal· is from defendant's second trial. In *State v. Rodriguez,* 186 Ariz. 240, 245, 921 P.2d 643, 648 (1996), this court reversed defendant's first conviction because the trial court erroneously admitted defendant's statements to police taken in violation of his *Miranda* rights.

2. Trial testimony established that the victim's blood alcohol level at the time of death was over

The next afternoon, a friend knocked on her door but heard no answer. The friend returned several times that day and left notes for the victim.

¶ 3 On August 26, the friend returned to the apartment and found the door unlocked. Opening the door, she discovered that the apartment had been ransacked. A maintenance man entered the apartment, found the victim's body, and then remained outside the apartment door until police arrived.

¶ 4 The police found the victim on the bathroom floor in a pool of blood. She was clad only in a nightgown, which had been pulled up over her chest. She had been severely beaten and repeatedly slashed and stabbed. Two objects, a curling iron and a knife handle (with no blade), had been inserted into the victim's vagina. The curling iron was left switched on.

¶ 5 The police found several pieces of broken knives on the floor beside the body, including a knife blade bearing a palm print. James Wallace, a fingerprint examiner for the Tucson Police Department, examined the blade. According to Wallace's trial testimony, the print on the blade matched defendant's palm. Further, in response to a question asked by the jury during deliberations, Wallace testified that the print was impressed in "body fluid." The palm print provided the only physical evidence linking defendant to the crime.

¶ 6 At trial, defendant denied that the palm print was his. He testified that if it was his print, he did not know how it came to be on the knife blade. Defendant further testified that he did not know the victim. He denied having ever been in her apartment, although he lived in the adjacent apartment complex at the time of the killing.

¶ 7 Following two days of testimony, the jury convicted defendant on December 12, 1996. The court sentenced defendant to

death after holding a hearing on aggravation and mitigation.

¶ 8 Defendant raises multiple issues on appeal. Because we reverse defendant's convictions, we need not address the arguments related to sentencing.

## II.

¶ 9 Defendant first argues that he is entitled to a judgment of acquittal because the evidence presented was insufficient to support his convictions. We disagree.[3]

¶ 10 Judgment of acquittal is required when no substantial evidence supports a conviction. *State v. Hughes,* 189 Ariz. 62, 73, 938 P.2d 457, 468 (1997). Substantial evidence is that which reasonable persons could accept as sufficient to support a guilty verdict beyond a reasonable doubt. *Id.* "If reasonable [persons] may fairly differ as to whether certain evidence establishes a fact in issue, then such evidence must be considered as substantial." *Rodriguez,* 186 Ariz. at 245, 921 P.2d at 648.

¶ 11 Defendant's argument centers on the lack of any physical evidence other than his palm print linking him to the crime. We have held, however, that fingerprints[4] alone may support a conviction when "not found in a place and under circumstances where they could have been reasonably made at a time other than the time of the commission of the offense." *State v. Carter,* 118 Ariz. 562, 563, 578 P.2d 991, 992 (1978) (quoting *State v. Brady,* 2 Ariz.App. 210, 213, 407 P.2d 399, 402 (1965)). In *Carter,* a jury convicted defendant Carter of breaking into a house. Only a fingerprint on the inside of a window at the point of entry linked Carter to the break-in. At trial, Carter denied having ever been in the house. This court sustained the conviction, reasoning that fingerprint evidence is sufficient if the location of the fingerprints does not reasonably support the

.35 percent.

3. On appeal after defendant's first trial, we held that substantial evidence supported defendant's first conviction. We declined to set forth a detailed analysis, noting that the trial court would have to rule on any motion for directed verdict based on the record made at retrial. *State v.*

*Rodriguez,* 186 Ariz. 240, 245, 921 P.2d 643, 648 (1996).

4. At trial, uncontroverted expert testimony established that palm prints are identical to fingerprints with respect to their power to match and identify members of the population.

inference that the impression occurred other than during commission of the crime. *Id.*

¶ 12 Other Arizona cases have sustained convictions resting on fingerprint evidence if the jury could reasonably infer that the prints could only have been impressed when the crime was committed. *See State v. Burton,* 144 Ariz. 248, 252, 697 P.2d 331, 335 (1985) (defendant's fingerprints on pack of gum left by robber on store counter); *State v. Spain,* 27 Ariz.App. 752, 754, 558 P.2d 947, 949 (1976) (defendant's prints on bedroom window); *Brady,* 2 Ariz.App. at 212–13, 407 P.2d at 401–02 (defendant's fingerprints on filing cabinet that had been moved and rifled by thief; homeowner never allowed defendant inside house; homeowner bought the cabinet new and had recently cleaned it). Courts of other jurisdictions have likewise sustained convictions under similar circumstances. *See Taylor v. Stainer,* 31 F.3d 907, 909 (9th Cir.1994); *State v. Foster,* 282 N.C. 189, 192 S.E.2d 320, 326 (1972); *State v. Miller,* 49 Ohio St.2d 198, 3 O.O.3d 321, 361 N.E.2d 419, 422–23 (1977), *judgment vacated on other grounds,* 438 U.S. 911, 98 S.Ct. 3136, 57 L.Ed.2d 1156 (1978); *State v. Lucca,* 56 Wash.App. 597, 784 P.2d 572, 573 (1990); *see also* M.C. Dransfield, Annotation, *Fingerprints, Palm Prints, or Bare Footprints as Evidence,* 28 A.L.R.2d 1115, 1122, 1150 (1953).

¶ 13 In this case, the palm print evidence provides a sufficient link between defendant and the killing because the circumstances do not reasonably support the inference that the impression occurred other than during commission of the crime. The position of the print was inconsistent with regular use of a knife but was consistent with someone grasping the blade to slash a victim after the handle had broken off. *C.f. Taylor,* 31 F.3d at 909 (fingerprint position on sill consistent with someone crawling through window). At trial, defendant denied having ever been in the victim's apartment and offered no explanation for his print on the knife. *See State v. Bland,* 757 S.W.2d 242, 245 (Mo.App.1988) (fingerprint sufficient where defendant denied having ever been in house where his fingerprints were found following sexual assault); *State v. Miller,* 289 N.C. 1, 220 S.E.2d

572, 574 (1975) (thumbprint on lock at point of entry was sufficient; defendant denied having been on premises). Finally, the state's fingerprint expert testified that the print was on top of "body fluid," suggesting that the knife was already bloody when the impression occurred. *See State v. Phillips,* 15 N.C.App. 74, 189 S.E.2d 602, 605 (1972) (fingerprint left in blood sufficient). These circumstances reasonably exclude the inference that defendant's palm print came to be on the knife as a result of innocent activity. *See Taylor,* 31 F.3d at 909–10 (noting that fingerprint will support conviction where conceivable explanations consistent with innocence are "far-fetched, unsupported speculation"). Accordingly, sufficient evidence links defendant to the crime.

### III.

¶ 14 Defendant also argues that he is entitled to a new trial because the trial court refused to instruct the jury with respect to his alibi theory. We agree.

¶ 15 At trial, defendant relied on the defense of "alibi." He attempted to show he was at work, away from the victim's apartment, at the time of the killing. The trial judge, however, concluded that the jury should not hear defendant's proffered alibi instruction.

### A.

¶ 16 A party is entitled to an instruction on any theory reasonably supported by the evidence. *State v. Bolton,* 182 Ariz. 290, 309, 896 P.2d 830, 849 (1995); *State v. Shumway,* 137 Ariz. 585, 588, 672 P.2d 929, 932 (1983). Nevertheless, a trial court generally is not required to give a proposed instruction when its substance is adequately covered by other instructions. *State v. Mott,* 187 Ariz. 536, 546, 931 P.2d 1046, 1056, *cert. denied,* — U.S. —, 117 S.Ct. 1832, 137 L.Ed.2d 1038 (1997). Nor must the trial court give every specific instruction requested by the defense. Instead, the test is whether the instructions adequately set forth the law applicable to the case. *State v. Axley,* 132 Ariz. 383, 392, 646 P.2d 268, 277 (1982). We view jury instructions in their entirety when determining whether they ade-

quately reflect the law. *State v. Gallegos*, 178 Ariz. 1, 10, 870 P.2d 1097, 1106 (1994).

¶ 17  In deciding whether defendant was entitled to an alibi instruction, we first consider the sufficiency of the evidence to support an alibi defense.  Evidence tending to show that the defendant had no opportunity to commit the crime because he was at another place when the crime occurred raises the alibi defense.  *State v. Berry*, 101 Ariz. 310, 313, 419 P.2d 337, 340 (1966); *Azbill v. State*, 19 Ariz. 499, 501, 172 P. 658, 659 (1918).  To decide whether the record reasonably supports an alibi defense, we consider evidence tending to establish when the crime occurred and evidence showing defendant's whereabouts during that time.

¶ 18  With respect to the time of the killing, the state established the time of death within a several-day range.  Other evidence, if believed, tended to narrow the time to within a few hours.  The state's forensic pathologist testified that the killing probably occurred sometime early in the period between 6 p.m. on Tuesday, August 23 and 6 p.m. on Thursday, August 25.  A friend testified that he saw the victim alive late in the evening of August 24.  A neighbor heard the victim's voice, arguing with an unidentified man, at approximately 2 a.m. on August 25.  Finally, a co-worker testified that the victim did not come to work on August 25, although she was expected about 6 a.m.

¶ 19  To establish his whereabouts at the time of the crime, defendant presented time records from work, the testimony of a co-worker, and his own testimony.  Defendant testified that he worked Thursday, August 25 from 12:34 a.m. until 4:56 a.m.; that he could not cheat on his hours; that he had no car and therefore no way to drive to the scene during work time; and that he went home and to bed immediately after he clocked out.

¶ 20  Resolving all inferences favorably to appellant, the jury could have found that the killing occurred on August 25 between 2 a.m., when a neighbor heard the victim speaking, and some time before 6 a.m., when the victim's co-worker expected her.  The jury could have further found that defendant was at work on August 25 until 4:56 a.m. Considering defendant's testimony that he went

home and straight to bed after work, defendant presented evidence that his location prevented him from committing the crime.  *See Smith v. State*, 302 Md. 175, 486 A.2d 196, 199 (1985) (alibi sufficiently raised though evidence of alibi was limited to defendant's uncorroborated testimony); *c.f. State v. Plew*, 150 Ariz. 75, 77–78, 722 P.2d 243, 245–46 (1986) (self-defense instruction required even though evidence of self-defensive action was limited to defendant's uncorroborated testimony).  The evidence therefore reasonably supports an alibi defense.

**B.**

¶ 21  Having concluded that the evidence reasonably supported an alibi defense, we turn to the question whether the trial court erred by failing to give an alibi instruction.  Although this court has approved alibi instructions given when a defendant presented evidence of being elsewhere at the time of the charged crime, we have not decided whether a trial court's refusal to give an adequately supported alibi instruction can be reversible error.  *See Berry*, 101 Ariz. at 313, 419 P.2d at 340 (failure to give alibi instruction was not error because alibi was not supported by the evidence); *Azbill*, 19 Ariz. at 501, 172 P. at 659 (approving alibi instruction where evidence showed that defendant lacked opportunity to commit a crime because of absence from time and place).  In this case, we hold that the trial court erred by failing to give the alibi instruction.

¶ 22  Other jurisdictions are split with respect to the necessity of an alibi instruction.  The majority view holds that "the accused is entitled to have the court, upon request, give proper and adequate instructions upon the defense of alibi, if such a defense is supported by evidence...."  75B AM.JUR.2D *Trial* § 1261 (1992).  Courts following the majority view reason that a separate alibi instruction prevents the jury from erroneously believing that the defendant has the burden of proving that he was elsewhere.  *See Ferguson v. State*, 488 P.2d 1032, 1038 nn. 19–22 (Alaska 1971) (listing cases); *Duckett v. State*, 104 Nev. 6, 752 P.2d 752, 754 n. 2 (1988) (listing cases).

¶ 23 The state urges us to adopt the minority view, under which the court need not separately instruct on alibi. *See State v. Hess,* 9 Ariz.App. 29, 33, 449 P.2d 46, 50 (1969). In *Hess,* the court of appeals held that "the trial court cannot err in refusing to instruct the jury with a specific charge relating to alibi, providing proper and adequate instructions are given on the elements of the crime charged and on reasonable doubt." 9 Ariz.App. at 33, 449 P.2d at 50. The court believed the minority rule was "the more sound rule of law" because (1) alibi is not an affirmative defense, but rather falls under the "aegis of a general denial"; and (2) other instructions adequately instruct the jury that it must acquit if the state fails to prove the defendant's presence at the crime. *Id.*

¶ 24 We agree that alibi is not an affirmative defense. *See Singh v. State,* 35 Ariz. 432, 439, 280 P. 672, 674 (1929), *overruled on other grounds by State v. Hunter,* 136 Ariz. 45, 50, 664 P.2d 195, 200 (1983). However, we view *Hess'* acceptance of the minority approach as inconsistent with the general rule entitling a party to an instruction on any theory reasonably supported by the evidence.

¶ 25 A defendant is not required to prove an alibi; rather, the jury must acquit a defendant if the alibi evidence raises a reasonable doubt about whether the defendant committed the crime. *Id.* The alibi instruction therefore redresses the fundamental risk that the jury may interpret the defendant's failure to prove his alibi as proof of guilt. Moreover, standard instructions about the burden of proof provide a poor substitute for a properly supported alibi instruction. When the court does not expressly instruct the jury on alibi, jurors may incorrectly assume that the defendant bears the burden of proving his alibi. Absent an alibi instruction, then, the jury may be mistaken about this crucial point. *Accord Duckett,* 752 P.2d at 754.

¶ 26 In this case, defendant requested an instruction on alibi based on evidence that reasonably supported an inference that the killing occurred during the time that defendant was either at work or at home. Be-

cause the standard burden of proof instructions do not redress the risk of burden shifting engendered by alibi evidence, the trial court erred when it refused to give an alibi instruction.

### C.

¶ 27 The trial court's failure to give an alibi instruction does not mandate reversal. Rather, we apply a harmless error analysis when the trial court gives incorrect instructions. *See State v. Amaya–Ruiz,* 166 Ariz. 152, 173, 800 P.2d 1260, 1281 (1990); *State v. Hunter,* 136 Ariz. 45, 51, 664 P.2d 195, 201 (1983). We will not reverse a conviction if we can conclude, beyond a reasonable doubt, that the error had no influence on the verdict. *Hunter,* 136 Ariz. at 51, 664 P.2d at 201. We cannot reach that conclusion in this case. Only one piece of evidence linked defendant to the crime: a palm print on the murder weapon. In addition, the defense relied exclusively on the alibi theory. Given the lack of overwhelming proof of guilt and the importance of the alibi defense, we cannot say, beyond a reasonable doubt, that the error did not affect this verdict. Thus, we reverse defendant's convictions.

### D.

¶ 28 The state argues that defendant's requested alibi instruction is a comment on the evidence that, if given, would violate the Arizona Constitution, article VI, section 27.[5] We disagree.

¶ 29 To violate Arizona's constitutional prohibition against commenting on the evidence, the court must express an opinion as to what the evidence proves. *State v. Barnes,* 124 Ariz. 586, 590, 606 P.2d 802, 806 (1980). The constitution prohibits the sort of judicial comment upon the evidence that would interfere with the jury's independent evaluation of that evidence. *State v. Smiley,* 27 Ariz.App. 314, 317, 554 P.2d 910, 913 (1976).

---

5. Ariz. Const. art. VI, § 27, provides, in pertinent part: "Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law."

**64**

¶ 30 Defendant requested the following alibi instruction from the Recommended Arizona Jury Instructions (RAJI):

> The defendant has produced evidence of being absent at the time and place the alleged crime was committed. If you have a reasonable doubt whether the defendant was present at the time and place the alleged crime was committed, you must find the defendant not guilty.

See RAJI (Criminal) No. 12 (1989).[6] Unlike a comment on the evidence, the requested instruction does not suggest to the jury that the evidence should lead them to any particular result. Rather, it reframes the burden of proof in the context of appellant's alibi theory.[7]

### IV.

¶ 31 Defendant also argues that he is entitled to a new trial because the prosecution failed to disclose matters related to the opinion of the state's fingerprint examiner, James Wallace. Because we remand for a new trial on other issues, we do not consider whether the prosecution's behavior would entitle defendant to a new trial. We do, however, express our concern that the prosecution may have failed in its special duty to ensure that defendant received a fair trial.

¶ 32 The record includes substantial support for defendant's assertion that the prosecutor's failure to disclose the substance of Wallace's opinion, along with related testing reports or other materials,[8] both violated

Rule 15.1(a), Ariz. R.Crim. P., and avoided defendant's pretrial discovery request.

■ ¶ 33 We emphasize that the responsibilities of a prosecutor go beyond the duty to convict defendants. Pursuant to its role of "minister of justice," the prosecution has a duty to see that defendants receive a fair trial. Ariz. R. Sup.Ct. 42, E.R. 3.8, comment; State v. Cornell, 179 Ariz. 314, 331, 878 P.2d 1352, 1369 (1994). The prosecution's discovery practice in this case led it to neglect that duty.

### V.

¶ 34 For the foregoing reasons, we reverse defendant's convictions and sentences and remand for a new trial.

ZLAKET, C.J., JONES, V.C.J., and FELDMAN and MARTONE, JJ., concur.

**6.** The RAJI alibi instruction was revised in 1996. RAJI (Criminal) 11 now states:
The state has the burden of proving that the defendant was present at the time and place the alleged crime was committed. If you have a reasonable doubt whether the defendant was present at the time and place the alleged crime was committed, you must find the defendant not guilty.
This language more clearly reflects the instruction's utility in redressing the risk of burden shifting. However, the revised instruction also includes an alternate paragraph, which retains the pre–1996 wording. The second paragraph of RAJI (Criminal) 11 appears redundant and unnecessary when the jury properly receives the portion of the instruction quoted above.

**7.** In State v. West, 176 Ariz. 432, 444, 862 P.2d 192, 204 (1993), we cited article VI, section 27 of the Arizona Constitution in rejecting a challenge to a trial court's denial of an alibi instruction. The court noted that "jury instructions are to be instructions on the applicable law, not comments on bits and pieces of evidence." Id. Although we agree with this basic proposition, whether West should control this case is unclear because the opinion does not set forth the wording of the instruction. In any event, we overrule West to the extent it may be read as inconsistent with this opinion.

**8.** Defendant's arguments concern only matters related to Wallace's testimony elicited in response to a question the jury submitted during deliberations. Defendant does not allege that the state failed to disclose materials related to Wallace's trial testimony.