IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

MAR 29 2007

COURT OF APPEALS
DIVISION TWO



| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | |
| | ) | 2 CA-CR 2005-0272 |
| Appellee, | ) | DEPARTMENT B |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| GARY EDWARD COX, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR 20043431

Honorable Frank Dawley, Judge Pro Tempore

AFFIRMED

Terry Goddard, Arizona Attorney General
  By Randall M. Howe and Kathryn A. Damstra                          Tucson
                                                       Attorneys for Appellee

Isabel G. Garcia, Pima County Legal Defender
  By Stephan J. McCaffery                                            Tucson
                                                      Attorneys for Appellant

E C K E R S T R O M, Presiding Judge.

¶1        Appellant Gary Cox was convicted after a jury trial of three counts of possession of a deadly weapon by a prohibited possessor, class four felonies. After finding Cox had six prior felony convictions, the court sentenced him to substantially mitigated, concurrent prison terms of six years. On appeal, Cox challenges his convictions on the grounds that the evidence was insufficient to support the conviction, the trial court erred when it refused Cox's requested instruction under *State v. Tyler*, 149 Ariz. 312, 316-17, 718 P.2d 214, 218-19 (App. 1986), and the trial court's instruction on constructive possession resulted in fundamental error. For the reasons stated below, we affirm.

¶2        We view the facts in the light most favorable to sustaining the convictions and resolve all reasonable inferences against Cox. *See State v. Stroud*, 209 Ariz. 410, ¶ 6, 103 P.3d 912, 914 (2005). On August 1, 2004, at about 3:00 a.m., Pima County Sheriff's Deputy Jeffrey Bonds stopped a white Mustang on a rural road. Although the vehicle had a 2005 registration tab on the license plate, Bonds was advised by radio that the registration had expired in June 2004. Cox was the driver of the vehicle and his fiancée, Shari Perko, occupied the passenger seat. The car was registered to Cox. Upon request, Cox and Perko produced identification for the officer. After receiving their driver's licenses, Bonds noticed a shell casing in the center console of the vehicle. He asked if there were any weapons in the vehicle, to which Cox replied in the negative. Perko remained silent.

¶3        While Bonds conducted record checks on Cox and Perko, Deputy Elliot Lyle responded to assist Bonds. Out of the presence of Cox, Lyle asked Perko if there were any

2

guns in the car. At first, she did not answer, looking down instead. When asked a second time, she nodded her head. And when asked a third time, she eventually informed him there was a shotgun in the trunk.

¶4 Deputy Lyle alerted Bonds who then asked Cox if he had any felony convictions. Cox admitted that he did. Bonds then asked if there was a shotgun in the trunk and Cox replied that there was. Bonds asked Cox where he had gotten it and Cox replied "that [he and Perko] had just picked up the gun from [a friend's] house and were taking it back to their residence." In the trunk, Bonds found a shotgun on top of various other items, including two loaded pistols, a small semi-automatic .380 and a .45 caliber, breach-loading pistol. He then searched the inside of the vehicle and found more shell casings and a .22 caliber live round in the center console.

¶5 On further questioning, Cox elaborated that the guns belonged to Perko and that "they picked them up at [a friend's] house, which is where they had been coming from, and [were] taking them back to their residence." According to Cox, Perko planned "to sell them or get rid of them in some way."

¶6 At trial, Perko testified that the guns belonged to her and produced bills of sale for each one. She further testified as follows. She and Cox had gone to a friend's house that night for a visit. Although that friend had previously borrowed the guns, she and Cox did not intend to retrieve them. But, because their friend was moving and was worried about losing the guns during the move, she suggested that Perko take them back. Perko saw her

3

friend put the shotgun in the trunk but was unaware that her friend had also loaded the two pistols until Cox opened the trunk for the deputies. Perko maintained that Cox was not present when the guns were placed in the trunk, and she claimed that Cox did not know the guns were in the car until she alerted him after Deputy Bonds had stopped their vehicle. She also said she had told the deputies this, although Deputy Lyle later contradicted that assertion.

¶7 Cox argues the trial court erred in permitting the jury to convict him on insufficient evidence. He moved for a judgment of acquittal at the close of the state's case, but the court denied the motion saying, "I think there are facts that are in dispute as to what Mr. Cox may have said to the police, but I think there is enough evidence to go to the jury under Rule 20." *See* Ariz. R. Crim. P. 20(a), 17 A.R.S. (court must grant judgment of acquittal "if there is no substantial evidence to warrant a conviction").

¶8 We will reverse a trial court's decision to deny a motion for a judgment of acquittal "only if there is a complete absence of 'substantial evidence' to support the conviction." *State v. Sullivan*, 187 Ariz. 599, 603, 931 P.2d 1109, 1113 (App. 1996). Substantial evidence is that which "reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt." *State v. Jones*, 125 Ariz. 417, 419, 610 P.2d 51, 53 (1980). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier

4

of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979).

¶9 To support Cox's conviction, the state needed to present substantial evidence that Cox was a "prohibited possessor" and that he "[p]ossess[ed] a deadly weapon." A.R.S. § 13-3102(A)(4). "Possession" is defined as "a voluntary act if the defendant knowingly exercised dominion or control over property." A.R.S. § 13-105(31). The same statute describes "possess" as "knowingly to have physical possession or otherwise to exercise dominion or control over property." § 13-105(30). Possession need not be exclusive—it "may be sole or joint." *State v. Miramon*, 27 Ariz. App. 451, 452, 555 P.2d 1139, 1140 (1976). The terms "dominion" and "control" carry their ordinary meaning, such that dominion means "'absolute ownership'" and control means to "'have power over.'" *State v. Tyler*, 149 Ariz. 312, 316, 718 P.2d 214, 218 (App. 1986), *quoting Webster's Third New Int'l Dictionary (Unabridged)* 496, 672 (1981).

¶10 Dominion or control in the absence of actual physical possession has been characterized as constructive possession. *See State v. Villavicencio*, 108 Ariz. 518, 520, 502 P.2d 1337, 1339 (1972). Constructive possession exists when the prohibited property "is found in a place under [the defendant's] dominion [or] control and under circumstances from which it can be reasonably inferred that the defendant had actual knowledge of the existence of the [property]." *Id.* Constructive possession may be proven by direct or circumstantial evidence, *see State v. Villalobos Alvarez*, 155 Ariz. 244, 245, 745 P.2d 991,

5

992 (App. 1987), however, the mere presence of a person where prohibited property is found is insufficient to show the person knowingly exercised dominion or control over it. *Miramon*, 27 Ariz. App. at 452, 555 P.2d at 1140.

¶11 Cox does not dispute that he was prohibited from possessing a weapon,[1] but rather contends the evidence was insufficient to show that he had exercised dominion or control over the weapons. Although Cox's trial defense rested almost entirely on his contention that he did not know the weapons were in the car, he also contended that, even if he did know the guns were in the car, he did not have dominion and control, or "power and authority" over them.

¶12 At the outset, we clarify that § 13-105(30) and (31) do not require a showing of both dominion and control. Those subsections are written in the disjunctive. Thus, the state needed only to present evidence to prove that (1) Cox knew the guns were in the trunk and (2) he exercised either dominion *or* control over them.

¶13 The state presented ample evidence that Cox knew the weapons were in the car. Deputy Bonds testified that Cox admitted there was a shotgun in the trunk of the car before he opened it and then told Bonds that he and Perko had acquired the shotgun at a friend's house and were taking it back to their house. Cox later admitted that they were retrieving all three guns. Nor was the jury required to credit Perko's claim, contradicted by

---

[1]During trial, Cox and the state stipulated that he "had been previously convicted of a felony offense, and his right to possess firearms had not been restored as of that date."

6

the nature of Cox's admissions, that Cox was unaware of the guns until Bonds stopped their vehicle. *See State v. Manzanedo*, 210 Ariz. 292, ¶ 3, 110 P.3d 1026, 1027 (App. 2005) (jury resolves conflicts in evidence).

¶14 Cox argues that he did not exercise dominion or control over the guns because Perko owned them. Citing *Miramon* he thus asserts that he was merely in the presence of the guns. In *Miramon*, the defendant was charged with possession of marijuana for sale after police officers found a large bag of marijuana under the seat that defendant occupied as a passenger. 27 Ariz. App. at 452, 555 P.2d at 1140. The court held that insufficient evidence existed to convict the defendant of possession of marijuana for sale because, even though the jury could infer that defendant knew the drugs were under his seat—the bag protruded several inches out from under the seat—"the state did not prove that he had the right to control its disposition or use." *Id.* at 452-53, 555 P.2d at 1140-41. Notably, however, Miramon neither owned the car in question nor had been driving it at the time of the stop. *Id.* at 452, 555 P.2d at 1140.

¶15 While we agree with Cox that mere potential access to someone else's property, as in *Miramon*, would be insufficient to prove possession, we disagree that the state showed nothing more than that. The jury heard evidence that Cox was driving the vehicle in which the guns were found, and the vehicle was registered in his name. Cox also admitted to the deputy that he and Perko were transporting the weapons to their shared residence. Although Perko testified the guns were hers, that she shared payments on the

Mustang, and had her own keys to the vehicle, the jury did not need to find that Cox's control over the weapons was exclusive to conclude that he had control over them. Rather, the jury could have reasonably inferred that Cox shared control of the guns with Perko because he spoke to the officer as though he was aware of, and had consented to, the plan to transport them and because Cox was driving the vehicle containing those guns in accordance with that plan. *See State v. Coley*, 158 Ariz. 471, 471, 763 P.2d 535, 535 (App. 1988) (evidence that defendant had knowledge of plan to transport weapons and presence of weapons in his van sufficient to support constructive possession instruction); *see also State v. Aikins*, 17 Ariz. App. 328, 336, 497 P.2d 835, 843 (1972) (holding constructive possession could be assumed from evidence that narcotics were found in car owned by, registered to, and driven by defendant at time of arrest). Thus, the state presented sufficient evidence from which the jury reasonably could have concluded beyond a reasonable doubt that Cox knowingly possessed the guns that were the bases of his convictions. The trial court did not err in denying Cox's motion for a judgment of acquittal.

¶16 Cox next argues the trial court erred when it refused to give his requested instruction defining prohibited possession. Absent a clear abuse of discretion, we will not reverse a trial court's decision to refuse a jury instruction. *See State v. Bolton*, 182 Ariz. 290, 309, 896 P.2d 830, 849 (1995).

¶17 A trial court is not obligated to give a proposed jury instruction "when its substance is adequately covered by other instructions," *State v. Rodriguez*, 192 Ariz. 58,

¶ 16, 961 P.2d 1006, 1009 (1998), or if it is an incorrect statement of law. *State v. Axley*, 132 Ariz. 383, 393, 646 P.2d 268, 278 (1982). "[T]he test is whether the instructions adequately set forth the law applicable to the case." *Rodriguez*, 192 Ariz. 58, ¶ 16, 961 P.2d at 1009. In determining whether an instruction adequately reflects the law, we view the instructions provided by the trial court in their entirety. *State v. Gallegos*, 178 Ariz. 1, 10, 870 P.2d 1097, 1106 (1994).

¶18         The trial court refused Cox's requested instruction, an instruction using language approved by Division One of our court in *State v. Tyler*, 149 Ariz. 312, 316-17, 718 P.2d 214, 218-19 (App. 1986), because it thought "the *Tyler* court went too far" by "impos[ing] a higher standard than the statute."[2] The court also distinguished *Tyler* by observing that Tyler's defense, unlike Cox's, involved the "momentary innocent handling of the weapon." Finally, the court said that Cox's defenses, that he did not know about the guns or that he was not exercising control or dominion over them, was covered by the other instructions it had provided.

---

[2]Cox's requested instruction stated:

> As for each count of the indictment, the State must prove beyond a reasonable doubt that Mr. Cox did willfully have or keep a deadly weapon in his possession with the intent to control the use and management thereof, or that Mr. Cox did willfully have a deadly weapon in his control with the power and intent to guide or manage such deadly weapon.

**¶19** The state argues the trial court correctly refused Cox's requested instruction because it is an incorrect statement of Arizona law and because the *Tyler* court approved it only in *dicta*. We agree. In *Tyler*, the defendant contended that the "momentary innocent handling" of a prohibited weapon did not constitute prohibited possession. 149 Ariz. at 316, 718 P.2d at 218. The defendant requested an instruction that would have directed the jury that they could not find him guilty "[i]f [they found] that the government failed to prove beyond a reasonable doubt that the defendant possessed the shotgun in question with criminal intent." *Id.* Division One upheld the trial court's decision to refuse the instruction, concluding that the instruction requested by the defendant was an erroneous statement of the law because it injected a requirement of intent into the statute that went beyond the requirement of "knowing" possession. *Tyler*, 149 Ariz. at 316, 718 P.2d at 218.

**¶20** Nonetheless, the *Tyler* court then suggested that, had the defendant requested an instruction taken from a Kansas case, *State v. Runnels*, 456 P.2d 16 (Kan. 1969), the trial court would have been correct to present it to the jury. *Tyler*, 149 Ariz. at 316-17, 718 P.2d at 218-19. That instruction stated that the state must prove beyond a reasonable doubt:

> "That the defendant . . . did wilfully have or keep a pistol in his possession with the intent to control the use and management thereof, or that the defendant did wilfully have a pistol in his control with the power and intent to guide or manage such pistol."

*Id., quoting Runnels*, 456 P.2d at 19. The instruction Cox requested was essentially identical to that in *Runnels*.

10

**¶21** Given the opportunity to more squarely address the propriety of the *Runnels* instruction in the context of a holding, we cannot similarly endorse its use. That instruction would require that the state demonstrate that the prohibited party possessed the weapon with either an "intent to control the use and management" of it or "with the power and intent to guide or manage" it. *Id.* But we can find no such requirement set forth by our legislature in the relevant Arizona statutes. *See* § 13-105(30) and (31). To the contrary, our statute requires only that the prohibited person knowingly possess the weapon—regardless of whether the possessor intends to control, manage, or guide its use. *Id.; see also State v. Young*, 192 Ariz. 303, ¶ 22, 965 P.2d 37, 43 (App. 1998) ("[T]he State [in *Tyler*] was not obliged to establish that a defendant who knowingly possessed a weapon did so with criminal intent . . . knowing possession sufficed to constitute the crime."). Although other jurisdictions may choose to define the offense in the same manner as Kansas, and permit "momentary innocent handling" of a prohibited weapon, *Tyler*, 149 Ariz. at 316, 718 P.2d at 218, Arizona is not yet among them. *See generally* § 13-3102 (no exceptions for knowingly possessing a prohibited weapon); *see also* A.R.S. §§ 13-401 through -417 (no justification defense for momentary control or control with innocent motives). Until and unless our legislature chooses to change it, we are bound by the existing statutory language.

**¶22** Here, the trial court instructed the jury on the elements required to convict Cox of the crime of prohibited possession. It also instructed the jury that, without physical possession, Cox could only be convicted if he exercised dominion or control over the

11

weapon. The court distinguished actual and constructive possession, explained that Cox's mere presence with the weapon was insufficient to convict on possession, and defined "knowingly." Like the *Tyler* court, we conclude that the trial court's instructions, when taken as a whole, accurately informed the jury of the statutory requirements to convict Cox for possession of a weapon by a prohibited possessor and the trial court did not err by refusing Cox's requested instruction. *See* 149 Ariz. at 316, 718 P.2d at 218.

¶23 Cox lastly argues the trial court inadequately stated the law when instructing the jury on constructive possession, thus causing fundamental error. *See State v. Schad*, 142 Ariz. 619, 621, 691 P.2d 710, 712 (1984) (possibility that conviction based on deficient jury instruction constituted fundamental error). To prove fundamental error, Cox must show three things: 1) error occurred, 2) the error "goes to the foundation of the case, takes away a right that is essential to his defense, and is of such magnitude that he could not have received a fair trial," and 3) the error caused him prejudice. *State v. Henderson*, 210 Ariz. 561, ¶¶ 23-26, 115 P.3d 601, 608-09 (2005). "Fundamental error review involves a fact-intensive inquiry, and the showing required to establish prejudice therefore differs from case to case." *Id.* ¶ 26, 115 P.3d at 608.

¶24 The instruction given by the trial court stated, "A person who . . . knowingly exercises the right of control over a thing, either directly or through another person, is then in constructive possession of it." Although the trial court omitted that possession is defined

also as a person exercising "dominion" over the object, we cannot agree that the trial court erred in doing so.

¶25        As mentioned above, § 13-105(30) and (31) do not require a possessor to exercise both dominion and control over an object, only one or the other. When instructing the jury on what it means to "possess" a prohibited weapon, the trial court captured both by explaining Cox had to "knowingly exercise dominion or control over property." Thus, the court covered the relevant concept in another instruction.

¶26        Moreover, the common definition of "dominion" is "'absolute ownership.'" *Tyler*, 149 Ariz. at 316, 718 P.2d at 218, *quoting Webster's, supra* ¶ 10, at 672. In this case, the state's theory rested on Cox having control of the guns because he knew they were in his vehicle and was knowingly transporting them, with his fiancée, to their shared residence. The state did not argue that Cox had exclusive or absolute ownership of, or dominion over, the guns. Thus, the dominion language arguably would not have assisted the jury in addressing the relevant legal issues in dispute. In short, in the context of the other instructions provided and the specific theories presented by the parties to the jury, the trial court did not commit error, fundamental or otherwise, by omitting the word "dominion" from the constructive possession instruction it provided.

¶27        For the foregoing reasons, we affirm.

_____
PETER J. ECKERSTROM, Presiding Judge

13

CONCURRING:

_____
J. WILLIAM BRAMMER, JR., Judge


_____
PHILIP G. ESPINOSA, Judge