NOTICE: NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

STATE OF ARIZONA,
*Appellee,*

*v.*

CEMALUDIN DANIEL VESELI, II,
*Appellant.*

No. 1 CA-CR 14-0151

FILED 1-29-2015

Appeal from the Superior Court in Coconino County
No. S0300CR201200404
The Honorable Cathleen Brown Nichols, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Coconino County Public Defender's Office, Flagstaff
By H. Allen Gerhardt, Jr.
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Patricia A. Orozco delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge Michael J. Brown joined.

---

**O R O Z C O**, Judge:

¶1           Cemaludin Daniel Veseli, II appeals from his conviction on one count of second degree murder, a Class 1 felony.  He contends (1) the trial court committed reversible error when it refused to instruct the jury on accident, his theory of the case; and (2) reversible error occurred because a key phrase in a Revised Arizona Jury Instruction (RAJI) on manslaughter was omitted.  For reasons set forth below, we affirm.

### FACTS[1] AND PROCEDURAL HISTORY

¶2           Veseli shot and killled his girlfriend (the Victim) in the face with a rifle at his studio apartment.  Before the shooting, both the Victim and Veseli had been drinking "hard alcohol."  Veseli was "being very mean" and calling the Victim names.  Although they were entertaining guests at a barbecue at their apartment, the mood "wasn't happy."

¶3           At some point, one of the guests saw Veseli go into his closet, retrieve his rifle and load it.  The Victim took the rifle away from Veseli, ran outside and gave it to her friend who tried to take the weapon to her car.  Before the friend reached her car, however, Veseli caught up with her and took the rifle back.  Veseli then "[walked] back kind of fast towards his apartment" with the rifle.  Two guests tried to convince the Victim to leave with them, but she refused, stating she would "try to calm [Veseli] down."  One guest saw Veseli sitting at the foot of the bed with the rifle in his hand and the butt resting on the ground, and the victim standing next to him.  The guest then heard Veseli call the victim "a whore.  Veseli appeared angry.

¶4           Several guests left Veseli's apartment and went to an apartment next door.  As they were leaving, two of them heard Veseli

---

[1]      We view the facts in the light most favorable to sustaining the jury's verdict and resolve all reasonable inferences against Veseli.  *See State v. Vandever*, 211 Ariz. 206, 207 n.2, 119 P.3d 473, 474 n.2 (App. 2005).

"chamber a round in the gun." Approximately "thirty seconds to a minute" later, one guest heard a shot. The guest ran to Veseli's apartment and saw Veseli running away; the guest heard Veseli say "Oh, my God. Oh, my God." Another guest stated that Veseli said: "Oh, my God, I did it. I did it. I actually did it. I shot you in the face, baby."

¶5 A guest entered the apartment to check on the Victim and found her lying face up in "a lot of blood." The guest checked her pulse and concluded the victim was dead. Several guests then drove to a nearby pay phone to call 911 after they were unable to get cell phone reception at the apartment complex.

¶6 Officers arrived at the apartment and found the Victim lying on the ground at the foot of the bed. A cell phone was between her left hand and leg.[2] When paramedics arrived, they determined that the Victim had been "deceased for a period that did not warrant an effort at resuscitation." A police officer outside the apartment complex attempting to locate Veseli was "surprised" when Veseli "jumped up from behind the bushes." At the officer's commands, Veseli "put his hands in the air," "identified himself" and was taken into custody. The officer observed blood on Veseli's shorts, left thigh and right shin.

¶7 Veseli's rifle was located inside the apartment on the bed, with live rounds in the chamber but the safety on. A live round and empty shell casing were found on the bed. The shell casing on the bed had been ejected from the rifle. A deformed bullet was recovered from a wallboard. The physical evidence established that the Victim was shot "basically horizontal" or "level" from a distance of approximately two and a half feet as she sat on the "foot end corner" of the bed and had moved or was moving.

¶8 The State charged Veseli with premeditated first degree murder based on its theory that he shot the victim because he was jealous and suspected that the Victim was possibly cheating on him. Evidence established that the Victim was still in touch with her ex-husband and several former boyfriends. Veseli testified that he was drunk and shot the victim by accident as he unloaded the rifle. Veseli denied being angry or upset with the Victim and denied calling her a "whore." He also testified that, when he realized he had shot the Victim, he put the barrel of the rifle under his chin to kill himself, but he could not go through with it. Veseli

---

2 Testimony at trial established that moments before the shooting the Victim had called a former boyfriend to ask if he could come pick her up.

testified that he ran around the corner to his mother's house for help rather than to the apartment the guests had gone to because he thought "no one was there."

**¶9** The jury found Veseli guilty of the lesser included offense of second degree murder, a Class 1 felony, and also that the offense involved domestic violence. The trial court later sentenced defendant to a presumptive term of sixteen years' imprisonment, and this timely appeal followed. We have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution, and Arizona Revised Statutes (A.R.S.) sections 12-120.21.A.1 (West 2015),[3] 13-4031 and 13-4033 (West 2015).

## DISCUSSION

I.     Failure to Give "Accident" Instruction

**¶10** Claiming a due process right to "a theory of the case instruction," Veseli asked the trial court to instruct the jury as follows:

> You have heard evidence that at the time in question, Mr. Veseli discharged his rifle by accident. An act is not done intentionally or knowingly if done by accident. Prior to finding Mr. Veseli acted intentionally or knowingly, you must be convinced beyond a reasonable doubt, that Mr. Veseli did not discharge the rifle by accident.

**¶11** "A party is entitled to an instruction on any theory reasonably supported by the evidence." *State v. Rodriguez*, 192 Ariz. 58, 61, ¶ 16, 961 P.2d 1006, 1009 (1998). "Nevertheless, a trial court generally is not required to give a proposed instruction when its substance is adequately covered by other instructions." *Id*. "Nor must the trial court give every specific instruction requested by the defense. Instead the test is whether the instructions adequately set forth the law applicable to the case." *Id*.

**¶12** Jury instructions are reviewed in their entirety when determining whether they adequately reflect the law. *Id*. at 61-62, ¶ 16, 961 P.2d at 1009-10. Furthermore, closing arguments may be considered when assessing a jury instruction's adequacy. *State v. Doerr*, 193 Ariz. 56, 65, ¶ 38, 969 P.2d 1168, 1177 (1998) (internal citation omitted). This court will reverse

---

[3]     We cite the current version of applicable statutes when no revisions material to this decision have since occurred.

only if the instructions collectively would have misled the jurors. *Id.* at 65, ¶ 35, 969 P.2d at 1168 (citation omitted).

**¶13**        Refusing a requested instruction is not error when the jury instructions given by the trial court adequately set forth the applicable law. *State v. Axley*, 132 Ariz. 383, 392, 646 P.2d 268, 277 (1982). The trial court here properly instructed the jury on the applicable law regarding both the charged offense and the lesser-included offenses of second degree murder, manslaughter and negligent homicide as well as the pertinent mental states. In conjunction with those instructions, Veseli's counsel thoroughly argued an accident theory in closing argument. He asserted that Veseli had not knowingly or intentionally shot the Victim but that, because of intoxication, he was, at best, guilty of negligent homicide by "fail[ing] to recognize a substantial and unjustifiable risk of causing the death of another." On this record, we find the trial court did not abuse its discretion in refusing to give Veseli's requested instruction.

II.        Omission of Manslaughter Instruction

**¶14**        In addition to premeditated murder, the trial court instructed the jury on the lesser included offenses of second degree murder, manslaughter and negligent homicide. Veseli contends that the trial court committed reversible error by failing to include the following language contained in RAJI 11.03(A)(1) on reckless manslaughter:

> Second degree murder and manslaughter may both result from recklessness. The difference is that the culpable recklessness involved in manslaughter is less than the culpable recklessness involved in second degree murder.

**¶15**        Veseli acknowledges he did not object to the final instructions or raise this issue before the trial court. Consequently, our review is limited to fundamental error. *See State v. Henderson*, 210 Ariz. 561, 567, ¶ 19, 115 P.3d 601, 607 (2005). Fundamental error is "'error going to the foundation of the case, error that takes from the defendant a right essential to his defense, and error of such magnitude that the defendant could not possibly have received a fair trial.'" *Id.* (citation omitted). Prevailing under this standard requires a defendant to establish both that fundamental error occurred and that the error caused prejudice. *Id.* at ¶ 20, 115 P.3d at 567. A defendant bears the burden of proving prejudice and may not simply rely on speculation to meet that burden. *See State v. Munninger*, 213 Ariz. 393, 397, ¶ 14, 142 P.3d 701, 705 (App. 2006).

¶16     Even if the trial court erred by omitting the recommended RAJI language, reversal is not warranted because Veseli has failed to prove resulting prejudice.  Veseli maintains that the jury here was "in effect, told that the elements of both the greater and the lesser offenses are identical" and was not "provided with adequate explanations concerning the differences between Second Degree Murder and Manslaughter."

¶17     The record shows that trial court correctly instructed the jury on the differing statutory elements of second degree murder, manslaughter and negligent homicide.  The trial court also correctly instructed the jury on the definitions of "intentionally," "knowingly" and "recklessly."  *See* A.R.S. § 13-105.10.  The trial court properly instructed the jury that, if the State proved recklessness beyond a reasonable doubt, it was no defense that the person who created the risk was unaware of it solely because of voluntary intoxication.   Despite the language Veseli claims was necessary, the jury received proper instructions on the elements of the lesser-included offenses. We presume the jury followed the instructions.  *See State v. LeBlanc*, 186 Ariz. 437, 439, 924 P.2d 441, 443 (1996).

¶18     More importantly, Veseli has not proven prejudice.  Veseli's trial defense focused on arguing that he was guilty only of negligent homicide.  Veseli has not shown that the jury instruction's omitted the distinction between second degree murder and manslaughter went to the "foundation of his case" or affected his defense so significantly that he "could not possibly have received a fair trial."  *See Henderson*, 210 Ariz. at 567, ¶ 19, 115 P.3d at 607.

## CONCLUSION

¶19     For the foregoing reasons, we affirm Veseli's conviction and sentence.



Ruth A. Willingham · Clerk of the Court
FILED: ama