NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

JAMES ALLEN POSEY, *Appellant.*

No. 1 CA-CR 13-0910
FILED 2-24-2015

---

Appeal from the Superior Court in Maricopa County
No.  CR2012-164559-001
The Honorable William L. Brotherton, Jr., Judge
The Honorable Rosa Mroz, Judge

**AFFIRMED**

---

COUNSEL

The Attorney General's Office, Phoenix
By Linley Wilson
*Counsel for Appellee*

The Maricopa County Public Defender's Office, Phoenix
By Mikel Steinfeld
*Counsel for Appellant*

## MEMORANDUM DECISION

Presiding Judge Andrew W. Gould delivered the decision of the Court, in which Judge Maurice Portley and Judge Jon W. Thompson joined.

**G O U L D**, Judge:

¶1          Defendant, James Allen Posey, timely appeals from his conviction on one count of possession of a dangerous drug, a Class 4 felony. He argues that the trial court erred in denying his motion to suppress and in denying his request for an instruction based on his theory of the case. For reasons set forth below, we affirm.

## FACTS[1] AND PROCEDURAL HISTORY

¶2          Police contacted Defendant as part of a burglary investigation. Officer Edmundo Saldivar testified that he conducted a pat down of Defendant and, as a result, "located a glass pipe that [he] believed to be a pipe used to smoke methamphetamine" in Defendant's left jacket pocket. The pipe looked like it had been used; it had "white residue" "consistent with smoking, being used." The officer arrested Defendant for possession of drug paraphernalia.

¶3          During a search incident to arrest, the officer located a baggie with a white crystal-like substance in Defendant's "front shirt pocket" that, based on training and experience, he believed to be methamphetamine. Officer Saldivar testified that, after he found the pipe, he asked Defendant "what it was," to which Defendant replied, "It's just a pipe. I'll go to prison for a long time." When he asked Defendant what was inside the baggie, Defendant replied something to the effect, "I would assume it's drugs but I don't know." An analysis revealed that the baggie contained 1.0 gram of methamphetamine in a usable condition.

¶4          The State charged Defendant with possession of a dangerous drug (methamphetamine), a Class 4 felony and possession of drug

---

[1]   We view the facts in the light most favorable to sustaining the jury's verdict and resolve all reasonable inferences against defendant. *State v. Vandever*, 211 Ariz. 206, 207 n.2 (App. 2005).

paraphernalia (pipe), a Class 6 felony.  Defendant represented himself at trial and testified on his behalf.  The jury found Defendant guilty of the drug possession charge but was "unable to agree" on the possession of drug paraphernalia charge.  The jury also found Defendant was on probation at the time of the offense.  The trial court further found Defendant had two prior felony convictions and sentenced Defendant to a presumptive 10-year term of imprisonment.[2]

**DISCUSSION**

I.      Motion to Suppress

**¶5**          Prior to trial, Defendant moved to suppress the pipe and the methamphetamine, arguing the search violated his Fourth Amendment rights.  Defendant argued the officers had no reasonable suspicion to stop him and that, even if they did, the search was neither consensual nor supported by officer safety reasons.

**¶6**          The court held a suppression hearing at which both Officer Saldivar and Defendant testified.  The evidence established that around 2:30 p.m. Officer Saldivar and his partner, Officer Smith, received an emergency radio call of a residential burglary in progress that described "three males" who had stolen three bicycles from the victim's residence and were last seen "walking with the bikes southbound on 16th Street."  The radio call indicated that the subjects were "white males" wearing "a brown shirt, a white shirt, and a green shirt and they all had bicycles with them."  Approximately 6 minutes later, the officers made contact with Defendant and his two companions who matched the descriptions of the white males and were seen walking southbound on 16th Street with bicycles.

**¶7**          The officers stopped the men and asked them for identification.  While Officer Smith returned to the patrol car to run the three subjects' information on the computer, Officer Saldivar stood by with the men.  At some point during the investigation, Officer Saldivar was informed that the caller who had initially called 911 "drove by and told the 911 operator that the individuals that we were out with were, in fact the same ones that were at the residential burglary."  Meanwhile, other officers at the scene of the residential burglary were in communication with Officer Saldivar relaying information back and forth with him through dispatch.

_____

[2]   At sentencing, the trial court dismissed the drug paraphernalia charge without prejudice.

3

When Officer Smith returned from the patrol car, the officers "proceeded to pat down" the three men for officer safety reasons.

**¶8**        On appeal, Defendant concedes that the officers had reasonable suspicion to initially stop him, but maintains that the frisk was deficient because, by the time it occurred, the officers no longer had reason to detain him and because there was no reason to believe he was armed or dangerous. Defendant also maintains the officers exceeded the permissible scope of the frisk itself.

**¶9**        In reviewing a trial court's denial of a motion to suppress, we review only the evidence presented at the hearing on the motion and view it in the light most favorable to sustaining the trial court's ruling. *State v. Gay*, 214 Ariz. 214, 217, ¶ 4 (App. 2007). We defer to the trial court's factual findings absent an abuse of discretion. *State v. Valle*, 196 Ariz. 324, 327, ¶ 6 (App. 2000). The trial court is also responsible for resolving conflicts of testimony, and this court will defer to those findings absent an abuse of discretion. *State v. Lacy*, 187 Ariz. 340, 347 (1996). "We review *de novo*, however, the trial court's ultimate legal determination that the search complied with the dictates of the Fourth Amendment." *Valle*, 196 Ariz. at 327, ¶ 6.

        A.        The Initial Stop

**¶10**        Defendant first maintains that, by the time Officer Saldivar frisked him, the initial reason for the stop had "dissipated" because the officers had investigated the original offense and the officers "had not developed new suspicion of a separate crime."

**¶11**        The officers clearly had reasonable suspicion based on specific facts to stop Defendant. *State v. Romero*, 178 Ariz. 45, 49 (App. 1993) (citing *Terry v. Ohio*, 392 U.S. 1, 21-24 (1968)). The men were located just minutes after the reported burglary; they matched the description of the suspects, and were walking southbound with three bicycles on 16th Street as the 911 caller had indicated.

**¶12**        It is also clear that the initial investigation was still on-going at the time the frisk occurred. The officers made initial contact with Defendant at 2:36 p.m. and the record at the hearing established that Defendant was arrested at 2:46 p.m. During those ten minutes, Officer Smith was confirming their identifications, Officer Saldivar was talking with the men, conducting his investigation, and receiving information from police at the burglary investigation via dispatch. There is simply no indication that the initial investigation was completed, or that the initial

suspicions of the police regarding the burglary had "dissipated," by the time the frisk occurred.

¶13        The fact that Defendant was not arrested for residential burglary as a result of the encounter is immaterial. The frisk occurred for officer safety reasons as part of the initial stop, for which the officers had reasonable cause. *State v. Navarez*, 235 Ariz. 129 (App. 2014), on which Defendant relies, is inapplicable to these facts.

        B.        *Terry* Frisk

¶14        Defendant next argues there was no reason for Officer Saldivar to frisk him because there was no indication that he was armed or dangerous or made any threatening gestures. A police officer may lawfully conduct a pat-down of an individual when the officer is "justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others." *Terry*, 392 U.S. at 24. "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." *Valle*, 196 Ariz. at 327, ¶ 9 (quoting *Adams v. Williams*, 407 U.S. 143, 146 (1972)).

¶15        According to *Terry*, an officer "need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." 392 U.S. at 27. In determining whether an officer acted reasonably under the circumstances, "due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Id*.

¶16        Here, the two officers were confronted with three men whom they suspected of having been involved in a residential burglary minutes earlier. Officer Saldivar testified that he executed the pat down for officer safety reasons because it was he and his partner and "three individuals," and "a potentially dangerous situation." Under these circumstances, it was not unreasonable for the officer to expect that any one of the three men might possess weapons or burglary tools that could prove dangerous to him and his partner. *See, e.g., United States v. Barnett*, 505 F.3d 637, 640 (7th Cir. 2007) (reasoning burglary is a crime "normally and reasonably expected to involve a weapon"). Furthermore, Officer Saldivar and his partner were outnumbered; they were justifiably concerned for their safety.

C.       Scope of the Frisk

**¶17**       Finally, Defendant contends the frisk exceeded the permissible scope.  Defendant argues the officer knew the item in his pocket was not a weapon and it was also not "immediately identifiable" as contraband.  The State argues we should not consider this issue because defendant failed to raise it below and deprived the state of developing the record or addressing it.  *See State v. Estrella*, 230 Ariz. 401, 404 n.1, ¶ 9 (App. 2012) (declining to consider argument raised for the first time on appeal in the context of a motion to suppress because reviewing court is limited to record presented at the hearing which is inadequate).  Because we find that Defendant raised the issue, however unartfully, in his reply as well as during the suppression hearing, we will address it on review.

**¶18**       In *Minnesota v. Dickerson*, the Supreme Court held that, if in the course of conducting a legitimate *Terry* search, a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity "immediately apparent" as contraband, the officer may lawfully seize the item.  508 U.S. 366, 375-76 (1993); *see also Valle*, 196 Ariz. at 327, ¶ 10 (quoting *Dickerson* 508 U.S. at 375-76).  This is known as the "plain feel" exception to the warrant requirement, and is viewed as the equivalent of the "plain view" exception.  *State v. Ahumada*, 225 Ariz. 544, 548-49, ¶ 15 (App. 2010).  The Fourth Amendment's requirement that the officer have probable cause to believe that the item is contraband before seizing it ensures against excessively speculative seizures.  *Dickerson*, 508 U.S. at 377 (requiring the contraband be "plainly detected through the sense of touch").  To be valid under the plain feel exception, the incriminating character of the object must be immediately apparent to the officer and not obtained through "squeezing, sliding and otherwise manipulating the contents."  *Id*. at 378.

**¶19**       Defendant claimed the officer improperly manipulated the object to ascertain that it was contraband.  The officer testified he "felt a cylindrical object with a bulbous tip, which is from my training and experience it is a pipe."  In denying Defendant's motion to suppress, the trial court ultimately found the officer's version of events credible over Defendant's.  Inherent in its ruling, is the fact that the court credited Officer Saldivar's "plain feel" avowal over Defendant's allegations of manipulation.  Absent an abuse of discretion, we defer to the trial court's resolution of conflicts in the evidence.  *Lacy*, 187 Ariz. at 347.

**¶20**       Also inherent in the ruling is the legal determination that the officer's testimony supports the conclusion the object was "immediately"

recognized as contraband and not, for example, a generic pipe. This legal determination, we review *de novo*. *Valle*, 196 Ariz. at 326, ¶ 6. We will infer the necessary findings to affirm the trial court, but will do so only if the implied findings do not conflict with the trial court's express findings. *State v. Zamora*, 220 Ariz. 63, 67, ¶ 7 (App. 2009).

**¶21** Officer Saldivar was a patrol officer for five years, had performed numerous investigations, and had taken courses in reference to drug investigations. His description of the "cylindrical object with a bulbous tip" coupled with his explicit reference to the fact that it was his "training and experience" that told him that "it is a pipe," support the inference that the officer immediately knew, at the moment he felt it, that it was a pipe used for drugs and therefore contraband. We conclude that the evidence at the suppression hearing, including reasonable inferences to be drawn therefrom, viewed in the light most favorable to supporting the trial court's ruling, supports the court's determination. *Gay*, 214 Ariz. at 217, ¶ 4. The trial court did not err in denying the motion to suppress.

II. Theory of the Case Instruction

**¶22** On appeal, Defendant argues the trial court incorrectly instructed the jury regarding possession of dangerous drugs because its instructions did not inform the jury the State had to prove he knew the substance he possessed was a dangerous drug, specifically, methamphetamine.

**¶23** "A party is entitled to an instruction on any theory reasonably supported by the evidence." *State v. Rodriquez*, 192 Ariz. 58, 61, ¶ 16 (1998). "Nevertheless, a trial court generally is not required to give a proposed instruction when its substance is adequately covered by other instructions." *Id.* "Nor must the trial court give every specific instruction requested by the defense; [t]he test is whether the instructions adequately set forth the law applicable to the case." *Id.*

**¶24** "We view jury instructions in their entirety when determining whether they adequately reflect the law." *Id.* at 61-2, ¶ 16. Furthermore, the "[c]losing arguments of counsel may be taken into account when assessing the adequacy of jury instructions." *State v. Bruggeman*, 161 Ariz. 508, 510 (1989). This court will reverse only if the instructions taken together would have misled the jurors. *State v. Doerr*, 193 Ariz. 56, 65, ¶ 35 (1998). "Where the law is adequately covered by instructions as a whole, no reversible error has occurred." *Id.*

¶25　　　　The trial court did not abuse its discretion when it refused to give Defendant's requested instruction. *See State v. Axley*, 132 Ariz. 383, 392 (1982) (not error to refuse specifically requested instruction when instructions given to jury adequately set forth applicable law). The court's instructions adequately and properly instructed the jury on the applicable law. The instructions specifically informed the jury the State was required to prove "each element of each charge beyond a reasonable doubt" and that, to prove possession of a dangerous drug, the State had to prove that defendant "knowingly possessed a dangerous drug, to wit, methamphetamine." Defendant was permitted to argue to the jury that there was no proof that he knew that the substance he had was methamphetamine. There is no probability the jury was misled.

## CONCLUSION

¶26　　　　For the foregoing reasons, we affirm Defendant's conviction and sentence.



Ruth A. Willingham · Clerk of the Court
FILED: ama